IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ISABEL CUEVAS, et al.

    Plaintiffs,

    v.

PUERTO RICO PORTS AUTHORITY, et al.

    Defendants.

CIVIL NO.: 17-1684 (MEL)

**OPINION AND ORDER**

Isabel Cuevas, Sonia Cuevas, and Nelson Cuevas ("Plaintiffs") filed a complaint against the Puerto Rico Port Authority, Aeropuerto Internacional Rafael Hernández, the Department of Transportation and Public Works, the Commonwealth of Puerto Rico, and various unidentified security companies on May 21, 2017.[1]  ECF No. 1.  Plaintiffs alleged that "Defendants breached their duty of care and their negligence was the proximate cause of Plaintiffs' injuries."  Id. at 2.  Pending before the court is the Puerto Rico Port Authority's ("Defendant") motion for summary judgment.  ECF No. 33.  Defendant argues in its motion for summary judgment that the damages suffered by Plaintiffs are minor and do not exceed the $75,000 threshold necessary for the existence of diversity of citizenship jurisdiction.  Id. at 2.  In their response in opposition, Plaintiffs reject the arguments made within Defendant's motion for summary judgment.  ECF No. 39. Defendant subsequently filed a reply to Plaintiffs' opposition.  ECF No. 55.

---

[1] The claims against the Commonwealth of Puerto Rico, the Department of Transportation and Public Works, and all generically named defendants have been dismissed.  ECF Nos. 31–32.

## I.   STANDARD OF REVIEW

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, the party cannot merely "rely on an absence of competent evidence, but must affirmatively point to specific facts [in the record] that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (citation omitted). The party need not, however, "rely only on *uncontradicted* evidence . . . . So long as the [party]'s evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version

of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original) (citation omitted).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## II. UNCONTESTED MATERIAL FACTS

Isabel Cuevas is 84 or 85 years old and suffers from the following illnesses: pancreatic cancer, liver cirrhosis, hepatic encephalopathy, emphysema, chronic obstructive pulmonary disease, diabetes, thrombocytopenia, and atherosclerotic heart disease. ECF Nos. 33-1, at 2, ¶ 5; 39-1, at 3, ¶ 5; 40-4, at 12, 14. The pancreatic cancer was detected a couple of weeks before June 1, 2018. ECF No. 39-3, at 73. It is unclear exactly when Isabel Cuevas's other conditions developed, but she had them at least since January 31, 2018. ECF No. 33-6. Further, the record reflects that Isabel Cuevas was experiencing leg cramps and back problems before November 15, 2016. ECF No. 39-3, at 22; 41.

On November 15, 2016, Isabel Cuevas sustained a fall while walking on the sidewalk of the Rafael Hernández Airport in Aguadilla, Puerto Rico. ECF No. 33-1, at 1, ¶ 1. Whether she tripped over due to a defect on the sidewalk is a matter in dispute. ECF No. 39-1, at 1–2, ¶ 1.

Sonia Cuevas, Isabel Cuevas's adult daughter, was beside her at the time of the accident. ECF Nos. 39-1, at 4, ¶ 8; 55-1, at 3, ¶ 8. She feared that Isabel Cuevas had suffered trauma to her head or a hemorrhage because her face was swollen. ECF Nos. 39-1, at 5, ¶ 11; 55-1, at 4, ¶ 11.

Isabel Cuevas received emergency room treatment for a laceration on her nose, which required three stitches. ECF Nos. 33-1, at 1, ¶ 2; 39-1, at 2, ¶ 2. She also suffered trauma to her head and hip.[2] Id. Isabel Cuevas could not travel for one week after the accident and, according to Sonia Cuevas, was "traumatized" for three weeks. ECF Nos. 39-1, at 5, ¶ 12; 55-1, at 4–5, ¶ 12.

Isabel Cuevas has been taken to the hospital five or six times since the accident due to back pain, inability to walk, and numbness in her legs. ECF No. 39-3, at 73. Isabel Cuevas's medical records reflect 1) that Isabel Cuevas went to the hospital on February 23, 2017 for a "rib/trunk injury" and was diagnosed with an "accidental fall; contusion of chest," 2) that Isabel Cuevas went to the hospital on March 9, 2017 for back pain and minor trauma and was diagnosed with an "accidental fall; contusion of lower back," and 3) that on May 23, 2018, a hospital employee described Isabel Cuevas as suffering from chronic back pain for the past two years since a fall. ECF Nos. 40-3, at 9, 17, 31; 40-4, at 12, 14. On May 23, 2018, Isabel Cuevas underwent a Lumbar Spine CT due to pain radiating to her lower extremities. ECF Nos. 39-1, at 5, ¶ 15; 55-1, at 6, ¶ 15.

### III.   LEGAL ANALYSIS AND DISCUSSION

Because in its motion for summary judgment Defendant is not arguing that there is insufficient evidence for Plaintiffs to prove by a preponderance of the evidence that Defendant

---

[2] Plaintiffs clarified that Isabel Cuevas received emergency room treatment after she was taken to El Buen Samaritano Hospital and treated by paramedics, who found that she had head trauma, trauma to her nose, trauma to her left knee, and trauma to her right arm. ECF No. 39-1, at 2, ¶ 2. However, the exhibit Plaintiffs cite to does not support this contention. See ECF No. 39-3, at 45.

was negligent, the analysis will focus on whether Plaintiffs have submitted sufficient evidence for a reasonable factfinder to conclude that at least one of them suffered in excess of $75,000 in damages, the amount in controversy required for diversity jurisdiction. Generally, multiple plaintiffs cannot aggregate their claims to meet the amount in controversy. CE Design Ltd. v. Am. Econ. Ins. Co., 755 F.3d 39, 43 (1st Cir. 2014). There is an exception to this rule in cases where several plaintiffs seek to enforce a single title or right, in which they have a "common and undivided interest." Id. (quoting Troy Bank of Troy, Indiana v. G.A. Whitehead & Co., 222 U.S. 39, 40–41 (1911)). "[I]ndividually cognizable and calculable claims" do not meet this definition. Id. at 44.

Turning to the case at bar, Plaintiffs' claims are individually cognizable and calculable because even though their alleged injuries resulted from the same event, they must be proven separately. See Rodriguez v. P.L. Indus., Inc., 53 F. Supp. 2d 538, 541 (D.P.R. 1999) ("Plaintiffs' argument that their claims must be aggregated because their independent claims result from a single act by Defendant is not compelling."). Thus, Plaintiffs' claims cannot be aggregated to meet the $75,000 amount in controversy requirement. This leaves two possible scenarios in which the court might exercise diversity jurisdiction over Plaintiffs' claims. First, all three claims might exceed the amount in controversy individually. Second, if one or two of Plaintiffs' claims cannot exceed the amount in controversy, the court could exercise supplemental jurisdiction over those claims. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005) (holding that as long as one party in a diversity jurisdiction action alleges a sufficient amount in controversy, the court may exert jurisdiction over other parties in the case even when those parties' own allegations are insufficient to meet the amount in controversy).

Here, neither Sonia Cuevas's claim nor Nelson Cuevas's claim for "severe mental distress, anguish, humiliation, and shame" exceed the $75,000 amount in controversy requirement. ECF No. 1, at 9.  In <u>Rosario Ortega v. Star-Kist Foods, Inc.</u>, 370 F.3d 124, 129 (1st Cir. 2004) (reversed on other grounds), the First Circuit held that the emotional distress claims of family members of an injured girl could not meet the $75,000 amount in controversy requirement.  Factors the First Circuit examined included whether the family members believed the girl would die of her injury, whether there was a "dramatic witnessing of the accident," whether the accident strained the family members' relationship with the girl, whether the family members missed any work or school obligations to take the girl to medical appointments, whether the family members received any counseling services in connection with the girl's injury, and whether the family members lived with the girl.  <u>Id.</u>  Here, Sonia Cuevas witnessed the accident and may have taken Isabel Cuevas to medical appointments but does not live with Isabel Cuevas.  Nelson Cuevas lives with Isabel Cuevas.  However, the parties have cited to no evidence indicating that Sonia Cuevas and Nelson Cuevas believed that Isabel Cuevas would die, that the accident strained their relationship with Isabel Cuevas, and that they have any work or school obligations to take Isabel Cuevas to medical appointments.  Further, no evidence has been cited to by the parties to suggest that Sonia Cuevas and Nelson Cuevas ever received psychological or psychiatric treatment for emotional damages in connection with the accident. ECF Nos. 33-1, at 1–2, ¶¶ 4, 7; 39-1, at 3, ¶¶ 4, 7.  Although Sonia Cuevas saw a psychologist, the evidence cited to suggests that her mental health treatment was for reasons unrelated to the accident.  ECF No. 39-3, at 16–17.  Thus, the only claim remaining that might exceed the $75,000 amount in controversy requirement is that of Isabel Cuevas.

When assessing whether a personal injury claim exceeds the amount in controversy, the District of Puerto Rico and the First Circuit have given weight to 1) the existence of broken or

fractured bones, permanent impairment of bodily functions, scarring, continuing physical pain, and emotional stress and embarrassment and 2) the need for surgery, physical therapy, and the wearing of a cast.  Tirado-Toro v. Builder's Square, Inc., 986 F. Supp. 714 (D.P.R. 1997) (holding that an injury the plaintiff suffered for which he received 14 stitches to the head was *not* worth $75,000 because he suffered neither broken or fractured bones nor permanent damage); Raya-Rodríguez v. Sears Roebuck Co., 389 F. Supp. 2d 275, 278 (D.P.R. 2005) (holding that a plaintiff could potentially recover more than $75,000 where she had a visible scar and suffered continuing pain, emotional stress, and embarrassment and also required surgery and had to undergo physical therapy); Stewart v. Tupperware Corp., 356 F.3d 335, 340 (1st Cir. 2004) (holding that plaintiffs who suffered injuries that resulted in permanent impairment to their total bodily functions and mental anguish *could* potentially recover more than $75,000 each); Rosario Ortega, 370 F.3d at 129 (holding that a plaintiff who required surgery, had to attend physical therapy and wear a cast, had a scar, and was diagnosed with a permanent physical impairment *could* potentially recover more than $75,000).

     Isabel Cuevas's only evidence of damages includes emergency room treatment for a laceration on her nose, which required three stitches, "trauma" to her head and hip, emotional "trauma" lasting three weeks, five or six visits to the hospital, and continuing pain in her legs. ECF Nos. 33-1, at 1, ¶ 2; 39-1, at 2, ¶ 2 and 5, ¶¶ 12–13; 39-3, at 73; 55-1, at 4–5, ¶¶ 12–13. Plaintiffs, however, have cited to no evidence indicating that 1) Isabel Cuevas suffered broken or fractured bones, permanent impairment of bodily functions (which is distinguishable from continuing pain),[3] or brain damage, 2) Isabel Cuevas needed surgery, physical therapy, or to wear a cast, and 3) Isabel Cuevas can no longer walk.

---

[3] See Stewart, 356 F.3d at 337; Rosario Ortega, 370 F.3d at 129.

7

Turning first to Isabel Cuevas's visits to the hospital, the parties have cited to no evidence indicating that Isabel Cuevas received medical treatment regarding or as a result of the injuries she suffered on November 15, 2016 aside from her emergency room treatment on that same day. ECF No. 33-1, at 1–2, ¶ 3. The first two visits to the hospital were due to injuries to areas of the body not alleged in the complaint. Thus, the falls the medical records refer to may be events unrelated to the fall at issue. Regarding the third visit to the hospital, a fall that occurred two years before May 23, 2018 would have occurred approximately on May 23, 2016, and the accident at issue occurred on November 15, 2016. Even lending the medical records a different interpretation, they state that Isabel Cuevas's back pain had been worsening for the past two weeks, which suggests that it is not constant. ECF No. 40-4, at 12, 14.

Most importantly, in her deposition, Sonia Cuevas admitted that Isabel Cuevas's visits to the hospital were "not because she fell down." ECF No. 39-3, at 75. She specified that "when you are a diabetic you have all kinds of conditions." Id. She further stated that Isabel Cuevas was also being treated for her kidneys "because of the diabetes." Id. at 77. Additionally, Nelson Cuevas's statement in his deposition that Isabel Cuevas has "gotten worse" since the accident does not address the cause of her visits to the emergency room. ECF No. 39-4, at 27, 31. Isabel Cuevas is 84 or 85 years old and unfortunately suffers from a rather lengthy list of illnesses, including pancreatic cancer, liver cirrhosis, hepatic encephalopathy, emphysema, chronic obstructive pulmonary disease, diabetes, thrombocytopenia, and atherosclerotic heart disease. Further, the record reflects that Isabel Cuevas was experiencing leg cramps and back problems before the accident. Under these circumstances, it is far from clear that without a medical expert, a reasonable jury could find it more likely than not that Isabel Cuevas's leg pain was a direct result of the accident.

Even assuming *arguendo* that without a medical expert, Plaintiffs can prove that Isabel Cuevas's continuing pain in her legs is the direct result of the injuries she suffered on November 15, 2016, no reasonable jury could find that Isabel Cuevas's claim exceeds the $75,000 amount in controversy requirement in light of the previously mentioned precedent.  Scarring, continuing physical pain, and emotional stress are certainly factors in determining whether a personal injury claim exceeds the amount in controversy.  However, those factors *alone* within the context of the evidence of this case are not enough to tip this claim over the edge.  See Raya-Rodríguez, 389 F. Supp. 2d at 278 (holding that a plaintiff could potentially recover more than $75,000 where she had a visible scar and suffered continuing pain, emotional stress, and embarrassment *and also* required surgery and had to undergo physical therapy).

Reasonable minds could differ as to the extent of Isabel Cuevas's damages.  However, this is a case where no surgeries or inability to walk ensued, where the injuries included only three stitches, and no fractures or brain damage, where the individual has a lengthy list of unrelated illnesses and was experiencing leg cramps and back problems before the accident, and where the individual's own daughter admitted that her mother's visits to the hospital were "not because she fell down."  With the evidence that Plaintiffs have cited to, a jury would be speculating as to whether these visits resulted from the fall on November 15, 2016, from another fall, or from Isabel Cuevas's unrelated health conditions.  Moreover, no evidence has been cited to by the parties to suggest that Isabel Cuevas ever received psychological or psychiatric treatment for emotional damages in connection with the accident on November 15, 2016.  ECF Nos. 33-1, at 1–2, ¶ 4; 39-1, at 3, ¶ 4.  Under these circumstances, no reasonable jury could find that the amount in controversy exceeds $75,000.

**IV.   CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 33) is GRANTED.[4]  The complaint is hereby DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 12th day of December, 2018.

s/Marcos E. López
U.S. Magistrate Judge

---

[4] Even though the Puerto Rico Port Authority filed the motion for summary judgment, and not Aeropuerto Internacional Rafael Hernández, the analysis is the same as to the latter Defendant.  Thus, the case is dismissed in its entirety without prejudice.  Further, the docket does not reflect that summons were ever issued and served to Aeropuerto Internacional Rafael Hernández. ECF No. 3.  It is not evident how Plaintiffs could show that the complaint should not be dismissed as to Aeropuerto Internacional Rafael Hernández for lack of diligent prosecution.